# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MASA FUKUDA, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>KEVIN NETHERCOTT, an individual, and NETHERCOTT, LLC, a Utah limited liability company,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:13-cv-917-JNP-PMW<br><br>Judge Jill N. Parrish<br>Magistrate Judge Paul M. Warner |

Before the court are two pending motions: Plaintiff Masa Fukuda's Motion for Summary Judgment (Docket 45), and Defendants Kevin Nethercott's and Nethercott, LLC's Motion for Summary Judgment (Docket 44). On June 3, 2016, the court held a hearing on all pending motions. The court then took the matter under advisement. After considering the parties' memoranda, the applicable law, and the undisputed material facts, the court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment.

## BACKGROUND

Sharla Kae Development, LLC ("Sharla Kae") is a Utah limited liability company that develops various drinking water technologies in Japan. Nethercott, LLC owned the Sharla Kae shares that are the subject of this case.

In fall 2012, Mr. Nethercott, a member of Nethercott, LLC and the founder of Sharla Kae, met Christine Adachi in Osaka, Japan. Ms. Adachi expressed interest in investing in Sharla Kae. Following their initial meeting in Japan, Mr. Nethercott and Ms. Adachi exchanged text and email messages regarding Ms. Adachi's interest in Sharla Kae. Upon their return to the United States, Mr. Nethercott and Ms. Adachi arranged a lunch meeting to discuss the purchase of the

1

Sharla Kae shares owned by Nethercott, LLC.

On October 30, 2012, Mr. Nethercott met Ms. Adachi and Mr. Fukuda, a Japanese citizen who is in the process of becoming a permanent U.S. resident, at a restaurant in Sandy, Utah. At the meeting, Mr. Nethercott learned that it was actually Mr. Fukuda who wanted to purchase the Sharla Kae shares.

The next day, October 31, 2012, Mr. Nethercott, on behalf of Nethercott, LLC, sold 120 shares of Sharla Kae stock to Mr. Fukuda for $30,000. The parties memorialized the sale in a Membership Interest Purchase Agreement ("Purchase Agreement"), which was signed by both parties. Mr. Fukuda gave Mr. Nethercott a check for $30,000, which Mr. Nethercott deposited in Nethercott, LLC's bank account at Wells Fargo.

The Sharla Kae shares were unregistered securities at the time Defendants sold them to Mr. Fukuda. No registration statement was filed regarding Defendants' sale of the Sharla Kae shares to Mr. Fukuda.

In December 2012, Mr. Fukuda contacted Mr. Nethercott, asking if he could withdraw his $30,000 investment. Mr. Fukuda told Mr. Nethercott that his purchase of the Sharla Kae shares had negatively impacted his immigration status and that he hoped to reinvest the $30,000 after he obtained permanent resident status. Mr. Nethercott did not return Mr. Fukuda's investment.

In August 2013, Mr. Fukuda filed a complaint against Defendants in Utah state court, seeking the return of his $30,000 investment. Defendants subsequently removed the case to the United States District Court for the District of Utah (Docket 2). In March 2014, Mr. Fukuda filed an amended complaint (Docket 21), and in November 2014, the court granted Defendants' motion to dismiss, dismissing all but two causes of action: Claim 1, the sale of unregistered securities in violation of Section 12(a)(1) of the 1933 Securities Act; and Claim 4, violations of

the Utah Uniform Securities Act, Utah Code § 61-1-7. In January 2016, the parties filed cross-motions for summary judgment on the federal securities claim, and Defendants filed a motion for summary judgment on the state securities claim (Docket 44 & 45).

## LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is genuine only if "a reasonable jury could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014). "In making this determination, 'we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'" *Id.* at 712–13 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000)).

## ANALYSIS

The court will first address the parties' cross-motions for summary judgment on Mr. Fukuda's 1933 Securities Act claim and then will address Defendants' motion for summary judgment on Mr. Fukuda's claim under the Utah Uniform Securities Act, Utah Code § 61-1-7.

### I.  Violation of Section 5 of the 1933 Securities Act

Mr. Fukuda's first cause of action asserts violations of Section 5 of the 1933 Securities Act, pursuant to Section 12(a)(1) of that same act. 15 U.S.C. §§ 77e, 77*l*.[1] "Sections 5(a) and (c)

---

[1] Section 5 of the 1933 Securities Act states,

> Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly . . . to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise . . . .
> It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell . . . any security, unless a registration statement has been filed as to such security . . . .

15 U.S.C. § 77e(a)(1), (c).

3

of the [1933] Securities Act . . . make it unlawful to offer or sell a security in interstate commerce if a registration statement has not been filed as to that security, unless the transaction qualifies for an exemption from registration." *SEC v. Gordon*, 522 F. App'x 448, 450 (10th Cir. 2013) (quoting *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1085 (9th Cir. 2010)).

To establish a Section 5 violation, a plaintiff must point to evidence that (1) "no registration statement was in effect as to the securities;" (2) the defendant "sold or offered to sell the securities;" and (3) "the sale or offer was made through interstate commerce." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 212 (3d Cir. 2006). "Once a plaintiff makes out a prima facie case that the securities offered or sold were not registered, the defendant bears the burden of demonstrating its entitlement to an exemption." *Busch v. Carpenter*, 827 F.2d 653, 656 (10th Cir. 1987); *Quinn & Co. v. SEC*, 452 F.2d 943, 945–46 (10th Cir. 1971). "The exemption relied upon must be strictly construed against the person claiming its benefit, as public policy strongly supports registration." *Quinn*, 452 F.2d at 946 (footnotes omitted).

Defendants do not dispute that Mr. Fukuda has made a prima facie case under Section 5(a). But Defendants argue that Mr. Fukuda does not have standing to bring his Section 5(a) claim. Defendants also raise two defenses to Mr. Fukuda's claim: the private offering exemption under Section 4(a)(2) of the 1933 Securities Act, 15 U.S.C. § 77d(a)(2); and alternatively, the resale exemption, Section 4(a)(1) of the 1933 Securities Act, 15 U.S.C. § 77d(a)(1). Each of these arguments is addressed below.

### A.      Standing

At the outset, Defendants present an unusual argument involving the Section 4(a)(2)

---

Section 12(a)(1) allows individuals to bring suit against "any person who . . . offers or sells a security in violation of [Section 5] . . . to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." *Id.* § 77*l*(a)(1).

4

private offering exemption. Although Defendants argue that the Section 4(a)(2) private offering exemption applies to the parties' transaction, Defendants also argue that Mr. Fukuda lacks standing to bring his claim. Specifically, Defendants argue that "[i]n order to have standing to assert a Section 12(a)(1) claim, a plaintiff must show that he purchased the securities at issue directly in a public offering and not in the aftermarket."

But "[b]y its terms, Section 5 of the 1933 Act creates liability for *any* securities sale for which 'a registration statement is [not] in effect;' it does not limit liability to initial distribution." *SEC v. Phan*, 500 F.3d 895, 901–02 (9th Cir. 2007) (quoting 15 U.S.C. § 77e(a)). Nor does Section 5 limit liability to "public offerings." *Id.* (quoting *SEC v. Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998) ("*Each sale of a security* . . . must either be made pursuant to a registration statement or fall under a registration exception." (emphasis added)); *Allison v. Ticor Title Ins. Co.*, 907 F.2d 645, 648 (7th Cir. 1990) ("Section 5 . . . applies to transactions; *each sale* must be registered or exempt." (emphasis added)); 1 LOUIS LOSS ET AL., SECURITIES REGULATION 591 (4th ed. 2006) ("On its face, § 5 is all embracing.")).

Defendants appear to confuse Article III standing with the Section 4(a)(2) private offering exemption. While it is true that Section 4(a)(2) exempts from registration "transactions by an issuer not involving any public offering," 15 U.S.C. § 77d(a)(2), the potential applicability of this exemption does not mean that a plaintiff lacks standing to bring his or her claim. Rather, this exemption applies as an affirmative defense *after* plaintiffs have made a prima facie case—not as an initial hurdle to bringing a Section 5 violation.

  **B.**  **Section 5 Exemptions**

Having determined that Mr. Fukuda has standing to bring his Section 5 claim, the court now turns to Defendants' exemption arguments. Defendants argue that the Section 4(a)(2) private

offering exemption applies to the sale of the Sharla Kae stock. Alternatively, Defendants argue that the Section 4(a)(1) resale exemption applies. Each of these exemptions is addressed in turn.

### 1. Section 4(a)(2) Private Offering Exemption

Section 4(a)(2) of the 1933 Securities Act exempts from registration "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(a)(2). Similarly, Rule 506 of Regulation D, 17 C.F.R. § 230.506, "creates a safe harbor within this exemption by defining certain transactions [by issuers] as non-public offerings." *Platforms Wireless*, 617 F.3d at 1091. Defendants bear the burden of proving that the Section 4(a)(2) and Regulation D exemption applies. *Andrews v. Blue*, 489 F.2d 367, 374 (10th Cir. 1973).

Defendants argue that their transaction with Mr. Fukuda is exempt under Section 4(a)(2) and Regulation D because it was not a public offering but was instead a "purely private transaction." In opposition, Mr. Fukuda argues that the Regulation D and Section (4)(a)(2) exemptions do not apply because they are only available to issuers and Defendants are not issuers of the shares sold to Mr. Fukuda. Specifically, Mr. Fukuda asserts that "[i]t is undisputed that the issuer of the Shares in this case was Sharla Kae Development, LLC," not Defendants. In response, Defendants gloss over Mr. Fukuda's argument and fail to provide any evidence that they—not Sharla Kae—are the issuers of the securities.

The term "issuer" as used in Regulation D is defined under Section 2(a)(4) of the 1933 Act. 17 C.F.R. § 230.501(h). Section 2(a)(4) defines "issuers" of securities as "every person who issues or proposes to issue any security." 15 U.S.C. § 77b(a)(4). "In a corporate offering, the issuer generally is the company whose stock is sold." *SEC v. Murphy*, 626 F.2d 633, 642 (9th Cir. 1980) (citing *SEC v. Ralston Purina*, 346 U.S. 119, 120 (1953)).

Here, the undisputed material facts establish that Sharla Kae is the issuer of the Sharla

Kae stock. As detailed in the Purchase Agreement, Sharla Kae "is the company whose stock is sold." *Id.*[2] Although Defendants sold the Sharla Kae stock to Mr. Fukuda, Defendants have not pointed to any evidence showing that they, and not Sharla Kae, are the issuers of the stock. Indeed, at oral argument, Defendants acknowledged that "[t]he issuer is Sharla Kae in this transaction." Accordingly, Section 4(a)(2) and Regulation D, which apply to "transactions *by an issuer* not involving any public offering," do not apply to Defendants. 15 U.S.C. § 77d(a)(2) (emphasis added); 17 C.F.R. § 230.506(a); *see also Murphy*, 626 F.2d at 642; *SEC v. Tuchinsky*, No. 89-6488-CIV 1-1 RYSKAMP, 1992 WL 226302, at *4 (S.D. Fla. June 29, 1992) ("Section 4(2)'s exemption for private offerings . . . is available only to transactions by the issuer."). Thus, as a matter of law, Defendants cannot rely on the Regulation D and Section 4(a)(2) exemption from the registration requirements of Section 5.

### 2. Section 4(a)(1) Resale Exemption

Section 4(a)(1) exempts "transaction[s] by any person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(a)(1). In order to rely on the Section 4(a)(1) exemption, Defendants bear the burden of proving that they do not fall within any of these categories. *Quinn*, 452 F.2d at 945–46.

Defendants have failed to show that they are not underwriters. Section 2(a)(11) defines an "underwriter" as "any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security . . . ." 15 U.S.C. § 77b(a)(11). In order to qualify for the Section 4(a)(1) exemption, Defendants must point to evidence showing they did not obtain the shares "with a view to" distribution. *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 807 (11th Cir. 2015); *Quinn*, 452 F.2d at 946.

---

[2] The Purchase Agreement states, "Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, one hundred twenty (120) membership interests of . . . Sharla Kae Development, LLC."

7

Whether Defendants obtained the Sharla Kae shares "'with a view to' distribution focuses on their investment intent at the time of acquisition." *Big Apple*, 783 F.3d at 807. Of course, "there is a distinction between acquiring shares . . . [for] an investment purpose and acquiring shares for the purpose of reselling them." *Id.* But "it is difficult to discern a party's intent at the time of purchase with respect to downstream sales of unregistered shares." *Id.* Because of this, "courts . . . have typically focused on the amount of time a security holder holds on to shares prior to reselling them." *Id.* In general, "a two-year holding period is sufficient to negate the inference that the security holder did not acquire the securities with a 'view to distribute.'" *Id.*; *Berckeley*, 455 F.3d at 213; *Ackerberg v. Johnson*, 892 F.2d 1328, 1336 (8th Cir. 1989). A holding period requirement has similarly been incorporated into Rule 144, 17 C.F.R. § 230.144, a safe harbor that qualifies transactions as exempt under Section 4(a)(1). 17 C.F.R. § 230.144(d)(1) (outlining a six-month to one-year holding period for certain types of securities).

Here, Defendants argue that "Nethercott's resale of the Sharla Kae stock to Plaintiff was a transaction 'between individual investors with relation to securities already issued.'" Defendants further argue that "there is no evidence to suggest that Nethercott obtained the stock with a view to distribution or that he made the sale of the stock in connection with the initial distribution." Yet Defendants do not point to any evidence in the record showing how long they held the stock before selling it to Mr. Fukuda. At oral argument, counsel for Defendants posited that Defendants owned the stock for "a couple of years, if not longer." But there is no support in the record for this assertion. Nothing in the record indicates when Defendants acquired the Sharla Kae stock. Because it is Defendants' burden to show they qualify for the Section 4(a)(1) exemption, the lack of any record evidence on this issue is fatal to Defendants' defense that Section 4(a)(1) exempts them from the registration requirements under Section 5 of the 1933 Act.

Defendants have failed to meet their burden of proof to establish that either Section 4(a)(2) or Section 4(a)(1) exempts them from registration requirements under Section 5 of the 1933 Act. Accordingly, the court grants Mr. Fukuda's motion for summary judgment on his Section 5 claim.

## II.     Utah Uniform Securities Act, Utah Code § 61-1-7

Mr. Fukuda's fourth cause of action alleges violations of the Utah Uniform Securities Act, Utah Code § 61-1-7, pursuant to Utah Code § 61-1-22. Like Section 5 of the 1933 Securities Act, Utah Code § 61-1-7 renders it "unlawful for any person to offer or sell any security in [Utah] unless it is registered under this chapter, the security or transaction is exempted under Section 61-1-14, or the security is a federal covered security . . . ." And like Section 5 of the 1933 Securities Act, "the burden of proving an exemption under Section 61-1-14 . . . is upon the person claiming the exemption." Utah Code § 61-1-14.5.

Defendants argue that the sale of the Sharla Kae stocks meets two different exemptions under § 61-1-7: "a federal covered security specified in the Securities Act of 1933," Utah Code § 61-1-14(1)(e)(i); and "a transaction not involving a public offering," Utah Code § 61-1-14(2)(n).[3] As to the first exemption, "a federal covered security," Defendants argue that they did not need to register the Sharla Kae stocks with the Utah Division of Securities "because the offering complied with Regulation D." And as to the second exemption, "a transaction not involving a public offering," Defendants advance the same arguments that they raised with respect to their defenses under the Section 4(a)(2) and Regulation D private offering exemption.

But Defendants do not qualify for either of these exemptions. As detailed above, Defendants failed to meet their burden of proof to establish that their offering complied with

---

[3] Utah courts have adopted the federal definition for the term "public offering." *See State v. Shepherd*, 989 P.2d 503, 508–509 (Utah Ct. App. 1999).

Regulation D or any of the other proffered exemptions, thereby exempting them from the registration requirements of Section 5 of the 1933 Act. Thus, the transaction is not "a federal covered security." Similarly, Defendants have failed to establish that their transaction did not involve a public offering under Section 4(a)(2). Because Defendants failed to meet their burden establishing an exemption under federal securities laws, they have similarly failed to meet their burden establishing an exemption under § 61-1-7. The court therefore denies Defendants' motion for summary judgment on Mr. Fukuda's state law claim.[4]

While Mr. Fukuda sought summary judgment on his claim under the 1933 Securities Act, he did not move for summary judgment on his state law claim. Thus, that claim remains unresolved at this juncture. At oral argument, Mr. Fukuda indicated he would voluntarily dismiss his state law claim in the event the court granted summary judgment in his favor on his Section 5 claim. If Mr. Fukuda decides to dismiss his state law claim, he should do so within fifteen (15) days of this order. If he fails to do so, the court will set this matter for a status conference where it will set a trial date and associated deadlines for the state law claim.

---

[4] Defendants also argue that Mr. Fukuda's "state law claims should be barred under the doctrine of preemption" because, in their view, the National Securities Market Improvement Act of 1996 ("NSMIA"), 15 U.S.C. § 77r, "preempts any state registration requirement with respect to a 'covered security.'" But Defendants argue that the security need not actually qualify to be a covered security in order for preemption to apply. Citing *Temple v. Gorman*, 201 F. Supp. 2d 1238, 1243–44 (S.D. Fla. 2002), Defendants argue that state security laws are preempted as long as the parties *attempt* or *purport* to qualify for a federal exemption. Although the Tenth Circuit has yet to address this question, the Sixth Circuit has rejected the *Temple* court's approach and held that the "NSMIA preempts state securities registration laws with respect only to those offerings that actually qualify as 'covered securities' according to the regulations that the SEC has promulgated." *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 912 (6th Cir. 2007). In reaching this holding, the Sixth Circuit looked to the plain language of 15 U.S.C. § 77r and concluded that "[h]ad Congress possessed the political will to preempt state Blue Sky laws in their practical entirety, it would have expressed that decision in the statute's plain text." *Id.*
   This court agrees with the Sixth Circuit's approach. Because Defendants have failed to meet their burden establishing that the Sharla Kae stocks are "covered securities," the court need not determine whether federal security registration laws preempt Utah's security registration laws.

## CONCLUSION

Based on the foregoing, the court GRANTS Plaintiff's Motion for Summary Judgment (Docket 45) and DENIES Defendants' Motion for Summary Judgment (Docket 44).

DATED this 15th day of July, 2016.

BY THE COURT:

Jill N. Parrish
United States District Judge